UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
MARLA HUNT,                   )
                              )
        Plaintiff,            )
                              )
        v.                    )      Civil Action No. 03-900 (RWR)
                              )
DEPUY ORTHOPAEDICS, INC.,     )
                              )
        Defendant.            )
_____)
```

### MEMORANDUM OPINION AND ORDER

Plaintiff Marla Hunt has sued DePuy Orthopaedics, Inc. ("DePuy"), manufacturer of her prosthetic hip, for breach of implied warranties, breach of express warranty, and replevin. DePuy moves for summary judgment, arguing that no express warranty was made, and that the implied warranty and replevin claims are barred by the statute of limitations.  Because DePuy's argument regarding the express warranty is unopposed, and the statute of limitations has run on the breach of implied warranty claims, but not on the replevin claim, DePuy's motion for summary judgment will be granted in part and denied in part.

### BACKGROUND

In January 1994, Hunt, a Maryland resident (Am. Compl. ¶ 2), had replacement hip surgery in the District of Columbia.  (Def.'s Mem. of P. & A. in Supp. of Renewed Mot. for Summ. J. ("Def.'s Mem.") at 4.)  Her surgeon, Dr. James Graeter, used a prosthetic hip manufactured by DePuy, an Indiana corporation.  (Def.'s Mem.

-2-

at 5; Notice of Removal ¶ 2.)  Before and after her surgery,
Dr. Graeter told Hunt that the prosthesis would last "25 years to
life." (Am. Compl. ¶¶ 11, 17.)  Hunt believes Dr. Graeter based
this statement on representations made to him by DePuy. (Def.'s
Mem. at 7.)  In April 1999, Dr. Paul Manner repaired Hunt's
prosthetic hip that Dr. Graeter had implanted. (<u>Id.</u> at 6.)
Following her 1999 surgery, Dr. Manner told Hunt that a DePuy
sales representative took possession of a hip prosthesis part
that had been removed from her.  (<u>Id.</u>)

Hunt filed against DePuy in the Superior Court for the
District of Columbia an action which was removed to this court
based upon diversity jurisdiction.  She was given leave to depose
Dr. Graeter, but after meeting with him, represented that
Dr. Graeter's deposition would be unnecessary.  (Nov. 3, 2006
Status Report at 2.)  Hunt's amended complaint alleges claims for
breach of implied warranty of fitness for a particular purpose,
breach of implied warranty of merchantability, breach of express
warranty, and replevin.  DePuy moves for summary judgment,
arguing that the implied warranty and replevin claims --
Counts 1, 2, and 4 -- are barred by the statute of limitations,
and that the express warranty claim -- Count 3 -- must fail

-3-

because there is no evidence that DePuy made an express warranty
to Hunt.  (Def.'s Mem. at 8, 12.)  Hunt filed an opposition.[1]

DISCUSSION

On a motion for summary judgment, "[t]he inquiry performed
is the threshold inquiry of determining whether there is the need
for a trial -- whether, in other words, there are any genuine
factual issues that properly can be resolved only by a finder of
fact because they may reasonably be resolved in favor of either
party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250
(1986).  Summary judgment may be granted only where "the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one
that is capable of affecting the outcome of the litigation.
Liberty Lobby, Inc., 477 U.S. at 248.  A genuine issue is one
where the "evidence is such that a reasonable jury could return a
verdict for the nonmoving party[,]" as opposed to evidence that
"is so one-sided that one party must prevail as a matter of law."

_____

[1] Hunt's opposition did not address DePuy's motion for
summary judgment as to the express warranty claim, and asked only
that DePuy's motion for summary judgment be denied as to her
claims concerning the implied warranties of fitness for a
particular purpose and of merchantability and for replevin.
(Pl.'s Opp'n at 19.)  The motion regarding the express warranty
claim is deemed conceded.  See Peter B. v. CIA, Civil Action No.
06-1652 (RWR), 2009 WL 1529211, at *5 (D.D.C. June 1, 2009).

-4-

Id. at 248, 252.  A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant.  Id. at 255.  The nonmoving party, however, must do more than simply "show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmovant must "come forward with specific facts showing that there is a *genuine issue for trial*."  Id. at 587 (emphasis in original) (internal quotation marks omitted).  In the end, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

I.   CHOICE OF LAW

"A federal court sitting in diversity must apply state law to the substantive issues before it[,]" and limitations periods are considered substantive issues requiring resort to state law for the purposes of this inquiry.  A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp., 62 F.3d 1454, 1458 (D.C. Cir. 1995).  In order to determine whether the District of Columbia or Maryland's limitations periods apply, a "federal court looks to the choice-of-law rules of the state in which it sits."  Id.  The District of Columbia choice-of-law rule requires the District's

-5-

own limitations periods to be applied.  Material Supply Int'l,
Inc. v. Sunmatch Indus. Co., Ltd., 146 F.3d 983, 992 (D.C. Cir.
1998) (citing A.I. Trade Fin., Inc., 62 F.3d at 1458); see also
Tolbert v. Nat'l Harmony Mem'l Park, 520 F. Supp. 2d 209, 211
(D.D.C. 2007) (stating that because a federal court applies the
choice-of-law rules of the state in which it sits in a diversity
case, the court looked to the District of Columbia's choice-of-
law rule, which required application of the District's own
limitations periods).  Since DePuy raises statute of limitations
arguments for Counts 1, 2, and 4, the District of Columbia's
limitations periods will be applied.

II.  IMPLIED WARRANTIES - COUNTS 1 & 2

     DePuy asserts that Hunt's implied warranty claims are time-
barred because the statute of limitations began running on
January 10, 1994, when Hunt underwent hip surgery, and ended on
January 10, 1998.  (Def.'s Mem. at 13-14.)  Hunt did not file
suit until 2003.

     Under D.C. Code § 28:2-725, "[a]n action for breach of any
contract for sale must be commenced within four years after the
cause of action has accrued."  D.C. Code § 28:2-725(1).  See also
Lee v. Wolfson, 265 F. Supp. 2d 14, 19 (D.D.C. 2003) (applying
§ 28:2-725 to a breach of implied warranty claim involving an
automobile).  In determining when the statute of limitations
starts to run, § 28:2-725 states that

> [a] cause of action accrues when the breach occurs,
> regardless of the aggrieved party's lack of knowledge
> of the breach.  A breach of warranty occurs when tender
> of delivery is made, except that where a warranty
> explicitly extends to future performance of the goods
> and discovery of the breach must await the time of such
> performance the cause of action accrues when the breach
> is or should have been discovered.

D.C. Code § 28:2-725(2).  Claims for breach of implied warranties do not fall within the exception for warranties that extend to future performance.  See Britt v. Schindler Elevator Corp., 637 F. Supp. 734, 738 (D.D.C. 1986) (rejecting the argument that "all implied warranties are necessarily continuing and that [the] claim falls within the 'future performance' exception to Section 28:2-725(2)"); 63B Kimberly Castelaz et al., American Jurisprudence - Products Liability § 1584 (2d ed. 2008) ("The impossibility of discovering a defect at the time of sale or delivery will not ordinarily create a warranty that extends to future performance . . .; it has been recognized, in this regard, that an implied warranty, by its very nature, cannot explicitly extend to future performance for purposes of taking advantage of the discovery rule.").  Hunt does not allege that the implied warranties of fitness and merchantability were explicitly extended to future performance.[2]

---

[2] The District of Columbia's statutory definitions for implied warranties of fitness and merchantability do not make an explicit mention of future performance.  Under D.C. Code § 28:2-315, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to

-7-

Hunt argues that "the particular issues involved in this case have not been presented to the District of Columbia Court of Appeals for review in quite a few years - if ever[,]" and that the discovery rule should apply.  (Pl.'s Opp'n at 4-5.)  Under the discovery rule, the statute of limitations is tolled until the plaintiff knows or through due diligence should have known of the injury.  Ehrenhaft v. Malcolm Price, Inc., 483 A.2d 1192, 1201 (D.C. 1984).  If the discovery rule were to apply, the cause of action would not have accrued until Hunt learned about the product's defect in April 1999 when she spoke with Dr. Manner and the statute of limitations would not bar her claim.  (Pl.'s Opp'n at 4.)  However, in Hull v. Eaton Corp., 825 F.2d 448, 456 (D.C.

---

select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."  Under D.C. Code § 28:2-314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Merchantable goods must be

> at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

D.C. Code § 28:2-314(2).

-8-

Cir. 1987), the D.C. Circuit concluded that under § 28:2-725, the discovery rule did not extend to breach of warranty claims. While <u>Ehrenhaft</u> had extended the discovery rule to include a breach of warranty claim involving the design and construction of a house, <u>Hull</u> differed because it involved, as this case does, "warranties arising under the Uniform Commercial Code"[3] and § 28:2-725 explicitly defined when a cause of action accrued. <u>Hull</u>, 825 F.2d at 456, 457 n.12 (noting also that there was no contrary controlling authority and giving deference to the district court's knowledge of local law). <u>See also</u> <u>Kuwait Airways Corp. v. Am. Sec. Bank, N.A.</u>, 890 F.2d 456, 460-61 (D.C. Cir. 1990) (noting that the D.C. Circuit declined in <u>Hull</u> to apply the discovery rule in a breach of warranty product liability case); <u>Long</u>, 877 F. Supp. at 14 ("Until the District of Columbia Court of Appeals rules otherwise, the discovery rule does not apply to determine when the statute of limitations begins to run for breach of warranty products liability claims. Rather, under [§ 28:2-725], the statute of limitations accrues when tender of delivery of the warrantied product is made."). Even though Hunt was unaware of the product's defect until 1999, under § 28:2-725, the statute of limitations started when the

---

[3] "The Uniform Commercial Code sections applying to breaches of warranty have been adopted and codified in . . . the District of Columbia[.]" <u>Long v. Sears Roebuck & Co.</u>, 877 F. Supp. 8, 11 (D.D.C. 1995).

-9-

prosthesis was delivered to her in 1994 and expired in 1998. Hunt's breach of implied warranty claims for merchantability and fitness for a particular purpose are time-barred.

III. REPLEVIN - COUNT 4

Replevin is an action "brought to recover personal property to which the plaintiff is entitled, that is alleged to have been wrongfully taken by or to be in the possession of and wrongfully detained by the defendant[.]" D.C. Code § 16-3701. "[I]t is not necessary to demand possession of the property before bringing the action." Id. According to D.C. Code § 12-301, the statute of limitations is three years for claims involving "the recovery of personal property or damages for its unlawful detention." D.C. Code § 12-301(2) (2007); see also Arnold v. District of Columbia, 211 F. Supp. 2d 144, 147 (D.D.C. 2002) (noting the three year statute of limitations for a replevin claim).

Generally, under D.C. Code § 12-301, a cause of action can be brought within the given time period from when "the time the right to maintain the action accrues." Capitol Place I Assocs. L.P. v. George Hyman Constr. Co., 673 A.2d 194, 198 (D.C. 1996). DePuy argues that Hunt's replevin claim is barred by the District of Columbia's statute of limitations because the claim started to accrue when it took possession of the medical device following Hunt's surgery in 1999. (Def.'s Mem. at 15.) Hunt contends that accrual did not start until she requested the return of the

prosthesis in her 2003 complaint because she did not object to
DePuy taking possession of the device "on the assumption that it
was going to be examined and tested by the defendant to ascertain
what had gone wrong with it and why it had failed in less than
five (5) years." (Pl.'s Opp'n at 18.)  The District of Columbia
Court of Appeals has not addressed the issue of when a replevin
claim accrues in a situation where a plaintiff agreed to give
property to a defendant and only later demanded its return.  In
Saddler v. D'Ambrosio, 759 F. Supp. 4, 9 n.6 (D.D.C. 1990), the
court noted that a common law replevin claim expired three years
after the date on which the defendant took possession of the
property.  However, the Saddler plaintiff had immediate knowledge
of the defendant's possession of his property without his consent
as the property was taken as evidence during his arrest.  By
comparison, Hunt did not contest giving the prosthesis to DePuy
and the alleged injury, DePuy's wrongful withholding, did not
accrue until she demanded return of the prosthesis in 2003.  Hunt
does not allege that DePuy's possession of the prosthesis was
wrongful starting from her surgery in 1999, but that "[i]t is the
detention of the prosthesis after its return was requested in
January, 2003 about which the plaintiff now complains." (Pl.'s
Opp'n at 18.)  Prior to Hunt's request, there was no wrongful
withholding, which is required to bring a replevin claim.  See
generally Mac'Avoy v. Smithsonian Inst., 757 F. Supp. 60, 67

-11-

(D.D.C. 1991) (noting that the essence of replevin is "the wrongful withholding of the property in question").  Summary judgment, then, is not warranted on this claim.[4]

## CONCLUSION AND ORDER

Because the breach of implied warranty claims were filed after the statute of limitations expired and DePuy's motion regarding the express warranty claim has been conceded, DePuy's motion for summary judgment will be granted as to Counts 1, 2, and 3.  Because Hunt agreed to give DePuy the prosthesis and the wrongful detention claim did not accrue until Hunt asked that the prosthesis be returned, DePuy's motion for summary judgment will be denied as to Count 4.  Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment [52] be, and hereby is, GRANTED in part and DENIED in part.  Summary judgment as to the breach of implied warranty claims -- Counts 1 and 2 -- and the express warranty claim -- Count 3 -- is granted to the defendant.  Summary judgment as to the replevin claim -- Count 4 -- is denied.  It is further

ORDERED that the parties confer and file a joint status report and proposed order by August 31, 2009, recommending how the case should proceed.

_____

[4] DePuy also argues that it was never in possession of the prosthesis, but this remains a disputed factual issue.  (Pl.'s Opp'n, Ex. 1 at 3 (noting Dr. Manner's belief that the DePuy representative requested and would have received the prosthesis after Hunt's surgery).)

-12-

SIGNED this 18th day of July, 2009.


                        _____/s/_____
                        RICHARD W. ROBERTS
                        United States District Judge